AO 91 (Rev. 08/09)  Criminal Complaint

# UNITED STATES DISTRICT COURT
## for the
### Southern District of Florida

| | |
|---|---|
| United States of America<br>v.<br>SHANNON DEMAR RYAN<br><br>*Defendant(s)* | )<br>)<br>)  Case No.  20-6364-SNOW<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __July 25, 2020 - July 26, 2020__ in the county of __Broward__ in the __Southern__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 1201(a)(1) | Knowingly and wilfully kidnap, seize, confine, abduct, and carry away the victim with the intent to collect a ransom, reward, or other benefit and held the victim for that reason; and used a facility or an instrumentality of interstate or foreign comerce in committing or furtherance of the offense. |

This criminal complaint is based on these facts:
See attached Affidavit.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Samuel Band, Special Agent, FBI
*Printed name and title*

Sworn to and subscribed before me telephonically.

Date: August 17, 2020

_____
*Judge's signature*

City and state:  Fort Lauderdale, Florida

Lurana S. Snow, United States Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

Your Affiant, Samuel Band, being duly sworn, deposes and states as follows:

1. I am a Special Agent (SA) with the Federal Bureau of Investigation ("FBI"), United States Department of Justice (DOJ), currently assigned to the Violent Crimes and Fugitive Task Force, in the Miami Division. My current duties involve the investigation of a variety of violations of federal offenses, including bank robberies, Hobbs Act robberies, extortion, and other violations of federal law. I have been an FBI Special Agent since February 2019, and have been assigned to the Miami Division since that time. Prior to becoming an FBI Special Agent, I was a police officer in Virginia with the Fairfax County Police Department from 2013 to 2018.

2. This affidavit is submitted in support of a criminal complaint charging defendant Shannon Demar Ryan ("Ryan"), with one count of Kidnapping, in violation of Title 18, United States Code, Section 1201(a)(1).

3. The statements contained in this affidavit are based on my personal knowledge, as well as information relayed to me by other law enforcement officials, and information obtained from interviews of individuals who are associates of the known defendant and the victims of the crime. I have not included each and every fact known to me about this investigation in this affidavit. Rather, I have included only the facts that are sufficient to establish probable cause for the issuance of a criminal complaint against Ryan for the above-described criminal violation.

4. On July 26, 2020, between approximately 8:00 AM and 8:30 AM, a two-year-old child later identified as K.A., was located wandering alone in an apartment complex in Miramar, FL. Law enforcement posted a photo of the child online and through social media in an effort to identify the child, and determined it was the child of L.C. Law enforcement began searching for L.C., and determined she was last driving a white GMC 3500 pickup truck bearing Ohio tag PRV9132. A license plate reader check showed that her vehicle was last seen at a Walmart parking lot at the intersection of State Road 7 and Hollywood Boulevard in Hollywood, FL on July 27,

2020. Law enforcement set up a surveillance, and on July 28, 2020, Ryan approached L.C.'s truck with the keys in his hand.

5. Ryan was subsequently interviewed and stated that he had known L.C. since approximately January 2019, and among other things, L.C. was coming to Florida to sell him her truck. Ryan told law enforcement that he paid L.C. $3,000 cash for the truck. According to Ryan, L.C. arrived in her vehicle at the RaceTrac gas station located at 5800 Hollywood Boulevard in Hollywood at approximately 2:30 PM on July 25, 2020. Ryan told law enforcement that he went to Ft. Lauderdale beach with L.C and her son that afternoon in his 2004 Gold Lexus ES 330, while leaving her truck behind. Ryan told officers that when the three returned to the RaceTrac gas station they parked at the pumps. Ryan further advised law enforcement that at approximately 2:30 AM on July 26, 2020, L.C. and her child left in a dark sedan with several unknown black males. Ryan advised that was the last time he ever saw L.C.

6. Law enforcement reviewed the video surveillance footage from the RaceTrac gas station to determine whether L.C. left that morning in a dark sedan. The video surveillance did not show Ryan's car at the pumps where he described it, nor did it show L.C. leaving in a dark sedan.

7. Law enforcement continued its investigation and obtained video surveillance footage from the area where K.A. was recovered abandoned. A vehicle consistent with Ryan's Gold Lexus is seen directly in front of the apartment complex where the child was recovered only minutes before the child was found. Ryan's Lexus is very distinguishable because it is missing the front bumper. Additionally, the surveillance video from the Racetrac gas station shows Ryan's car leaving the gas station at approximately 8:15 AM that morning, and returning at approximately 8:38 AM, which is consistent with the time frame in which the child was abandoned and recovered.

Law enforcement also noted that the Racetrac gas station is a short drive, less than 3 miles, from where the child was recovered.

8.     Law enforcement was able to retrieve historical cell cite information from Sprint for the phone that Ryan was confirmed to be using at the time.  The responsive records show that Ryan's phone was utilizing a tower in the area where the child was abandoned at the same time the child was abandoned and his car was observed on video surveillance.

9.     Law enforcement was able to determine that Ryan had been using a debit card belonging to C.L. A review of all transactions made on C.L.'s debit card that Ryan was using on July 26, 2020, revealed purchases at Racetrac and Walmart-- located in the same shopping center in Hollywood.  Your Affiant specifically reviewed two separate purchases made by Ryan on July 26, 2020 at Walmart. At approximately 9:42 AM, after the child was abandoned, video surveillance and store receipts show Ryan purchasing Hefty Strong 39 Gallon Extra Large Trash Drawstring Bags and two boxes of Extra Strength Carpet Odor Eliminator.  Approximately, fifteen minutes later, video surveillance and receipts show that Ryan went back into the Walmart and purchased a roll of Advanced Strength Duct Tape.

10.    On August 9, 2020, Ryan posted a publicly accessible video on his Facebook social media account discussing his relationship with L.C., in which he made a statement about covering a window on L.C.'s vehicle with a garbage bag because the window was broken and damaged. Law enforcement reviewed video surveillance footage of L.C.'s initial arrival and was able to determine that all the windows of her truck were intact at that time. Additionally, the rear view mirror of the truck appeared to be mounted and intact.  A federal search warrant was subsequently sought and executed on L.C.'s truck.  Law enforcement searched the truck and observed that the driver's side window was broken and the driver's side visor was bent out of its ordinary position.

Among other things, law enforcement recovered shovels with small droplets of a red substance on them.

11. Law enforcement interviewed J.M., a friend of Ryan's. J.M. advised law enforcement that he saw Ryan on July 26, 2020. J.M. advised that Ryan attempted to sell him a white GMC pickup truck for approximately $1,000. J.M. advised officers that Ryan told him that a girl from Georgia drove it to Florida.

12. On August 15, 2020, a federal search warrant was executed on Ryan's Lexus. Law enforcement located a half-empty container of all-purpose cleaner with bleach, numerous black trash bags, and a white powdery substance under the front passenger seat.

13. Law enforcement conducted interviews of several employees at the RaceTrac gas station in Hollywood where L.C. was last seen. An employee recognized a picture of Ryan and told law enforcement that they had seen Ryan using the RaceTrac dumpster. An additional employee specifically remembered seeing children's toys and women's clothing inside the dumpster on or around July 26, 2020. The employee recognized a distinct pair of floral pants worn by L.C. in a picture shown to them. Law enforcement recovered video surveillance footage from July 26, 2020, where Ryan can be observed parking his Lexus in front of the RaceTrac dumpster.

14. On August, 15, 2020, a federal search warrant was executed on the iPhone Ryan was using and had in his possession. A forensic extraction of the iPhone revealed Google searches from July 26, 2020. Specifically. Law enforcement recovered a Google search at 12:01 AM for "What day does commercial garbage pickup for Hollywood, Florida." Additionally, law enforcement recovered another search at 1:45 AM the same day for "Does bleach and alcohol make chloroform." According to the National Institute of Health, chloroform is commonly used to incapacitate a victim by rendering them unconscious.

15. Law enforcement interviewed numerous witnesses including her family members who indicated that L.C. would not leave her child alone with anyone. Additionally, law enforcement learned that L.C. was still breastfeeding.

16. Law enforcement has reviewed L.C.'s social media accounts and determined that L.C. used Facebook messenger as a regular means of communication with friends and family prior to her disappearance. Upon review of her social media after July 26, 2020, law enforcement has learned that there has not been any activity on her accounts.

17. Ryan's 2004 Lexus bearing an Ohio tag was manufactured outside of the State of Florida and had travelled in interstate and foreign commerce.

18. Based on my training and experience, as further supported by the foregoing facts, I respectfully submit that probable cause exists to believe that, beginning on July 25, 2020 and continuing through July 26, 2020, Shannon Demar Ryan did knowingly and willfully kidnap, seize, confine, abduct, and carry away K.A. with the intent to collect a ransom, reward, or other benefit and held the victim for that reason; and used a facility or an instrumentality of interstate or foreign commerce in committing or furtherance of the offense in violation of Title 18, United States Code, Section 1201(a)(1).

*FURTHER YOUR AFFIANT SAYETH NAUGHT.*

_____
Samuel Band, Special Agent
Federal Bureau of Investigation

Sworn to and subscribed before me telephonically this __17th__ day of August, 2020.

_____
LURANA S. SNOW
UNITED STATES MAGISTRATE JUDGE

5